UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LIFE INSURANCE COMPANY OF NORTH
AMERICA,

                              Plaintiff,

      -v-                                6:09-cv-11 (Lead)

JAN NESOM; MICHAEL STRANEY; J.S.,
a minor; JOANNE STRANEY; and RACHEL
STRANEY;

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
NORTH AMERICAN COMPANY
FOR LIFE AND HEALTH INSURANCE,

                              Plaintiff,

      -v-                                6:09-CV-1118 (Member)

JAN NESOM; MICHAEL STRANEY; RACHEL
STRANEY; JOANNE STRANEY; JEFFREY
ALAN STRANEY; NAOMI P. STRANEY,
individually and as Trustee; and CHARLES
THOMAS STRANEY, Trustee;

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

WILSON ELSER, MOSKOWITZ, EDELMAN     FRED KNOPF, ESQ.
   & DICKER LLP                             EMILY A. HAYES, ESQ.
Attorneys for Plaintiffs
3 Gannett Drive
White Plains, NY 10604

McNAMEE, LOCHNER, TITUS                 SCOTT A. BARBOUR, ESQ.
   & WILLIAMS, P.C.                         MATHEW P. BARRY, ESQ.
Attorneys for Defendant Jan Nesom
677 Broadway
Albany, NY 12207-2503

PHILLIPS LYTLE, LLP                                    MARC H. GOLDBERG, ESQ.
Attorneys for Straney Defendants
30 South Pearl Street
Albany, NY 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

This action is the result of conflicting claims to the proceeds of two life insurance policies. James Patrick Straney ("James") maintained policies with two insurance companies at the time of his death, North American Company for Life and Health Insurance ("NACOLAH") and Life Insurance Company of North America ("LINA").[1] NACOLAH and LINA each have been dismissed from the action, with the proceeds of their policies currently held by the Clerk of the Court. The defendants have competing claims to these proceeds.

Defendants Joanne, Michael, and Rachel Straney, along with their mother Naomi Straney ("Naomi") as trustee and her son, Jeffrey[2] (collectively "Straney defendants") have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, seeking a declaration that defendant Jan Nesom ("Nesom") is not entitled to any of the insurance proceeds, and an order that the proceeds be distributed to the four children of Naomi (Joanne, Michael, Rachel and Jeffrey). Nesom filed a cross motion for summary judgment pursuant to Rule 56(b) of the Fed. R. Civ. P., seeking a declaration that the

---

[1] LINA initiated this action through an interpleader complaint filed in this Court. Subsequently, NACOLAH filed an interpleader complaint in the Middle District of Florida. Both actions have been consolidated into this Court.

[2] Jeffrey was referred to as J.S. in the LINA pleadings due to his status as a minor at that time. Because he has attained the age of eighteen (18), his given name will be used herein.

proceeds be distributed according to the designation within the insurance policies and opposing the Straney defendants' motion. Oral argument was heard on March 26, 2010, in Utica, N.Y. and decision was reserved.

## II. FACTS

James and Naomi Straney divorced in 1997, having been married since 1980. The couple had four children together: Rachel, born 1982; Joanne, born 1984; Michael, born 1985; and Jeffrey, born 1991. As part of the marriage dissolution process, James and Naomi entered into an Agreement and Stipulation ("Agreement") in the Commonwealth of Virginia on August 15, 1996, which detailed the future responsibilities of both parties to each other, and to their children. See Goldberg Decl. Ex. B. The Agreement included the disposition of the marital assets, child custody and support payments, life insurance, and spousal support payments. Id.

The life insurance section of the Agreement followed other clauses assigning parental responsibility for costs towards the general support, health insurance, and college education of the couple's children. Id. at 10-12. Likewise, the life insurance clause is directed towards the financial security of the children, who were between the ages of five and fourteen at the time the Agreement was executed. That clause reads as follows:

> 17. Life Insurance: The parties acknowledge that they currently have two $100,000 life insurance policies insuring the life of the Husband [James] and Wife [Naomi]. In addition, Husband has certain life insurance through his current employer. Husband agrees to keep in full force and effect all life insurance currently in force. In addition, should Husband obtain new employment and is eligible for life insurance through that employer, Husband agrees to keep said life insurance in full force and effect. Wife shall reciprocally agree to maintain in full force and effect the policies of life insurance on her life. Husband currently owns and shall continue to own the policies ensuring [sic] his life. Wife currently owns

>and shall continue to own the policies insuring her life. Both parties agree to designate the children as beneficiaries with the following trustees:
>
>A. Trustees for policy insuring Husband's life shall be:
>  1. Naomi Straney
>  2. Charles Thomas Straney
>
>B. Trustees for policy insuring Wife's life shall be:
>  1. James Straney
>  2. Albert Jerome Scharf
>
>These trustees must act by consensus and can only use the proceeds of these life insurance policies for the benefit of the parties' children. Life insurance coverages in favor of the children as beneficiaries may be ratably reduced by 25% as each child attains the age of twenty-three (23).

Id. at 12-13.

When James and Naomi prepared the Agreement in 1996, James maintained a $100,000 life insurance policy issued by NACOLAH, with Naomi and their children identified as beneficiaries in "equal shares or survivors." Id. at Ex. A, 18. James also held a $160,000 life insurance policy and a $160,000 ADD (accidental death or dismemberment) policy, both through the Paul Revere Life Insurance Co. Barbour Aff. Ex. B, 2. Each of the $160,000 policies was obtained through his then-current employer, with Naomi as the beneficiary prior to formation of the Agreement. See id. at 2-3.

The entire Agreement, including the life insurance clause, became incorporated into the divorce decree, with judgment for divorce granted on October 1, 1997, in Florida.

James married Nesom in 1998, with James beginning work for a new employer, Maximus, Inc. in 1999. As a benefit, Maximus provided James with a $150,000 term life policy through LINA in 2005. See Goldberg Decl. Ex. H; Barbour Aff. Ex. C. James also purchased a $460,000 supplemental life policy from LINA in 2005, for a combined total life insurance with LINA of $610,000. See Goldberg Decl. Ex. H; Barbour Aff. Ex. C.

On April 28, 2008, James updated the beneficiaries[3] of the $100,000 NACOLAH policy, assigning twenty-five percent (25%) of the life insurance proceeds to his son, Jeffrey; twenty-five percent (25%) to his son, Michael; and fifty percent (50%) to his wife, Nesom. Barbour Aff. Ex. F; Goldberg Decl. Ex. F.  James also completed a beneficiary change form regarding the LINA policies on August 5, 2008, assigning Nesom seventy-four percent (74%) of the proceeds, with his sons Jeffrey and Michael each designated to receive thirteen percent (13%) of both the $150,000 policy and the $460,000 policy.  Barbour Aff. Ex. E; Goldberg Decl. Ex. E.

James passed away on September 22, 2008.  Goldberg Decl. Ex. G.  At the time of his death, the NACOLAH and LINA policies were in effect.  Nesom and the Straney defendants, including James' adult daughters Rachel and Joanne, filed competing claims against each policy.  LINA filed an interpleader complaint in this Court on January 6, 2009, with NACOLAH filing a similar complaint in the Middle District of Florida in April, 2009.  Both actions sought adjudication of the rights and obligations of the parties, with the NACOLAH depositing approximately $111,368 with the District Court in Florida and LINA depositing $610,000 with this Court.  Each insurer was dismissed from their particular action after depositing the funds with the Courts, and the two cases were consolidated to this Court on October 22, 2009.

---

[3] On April 28, 2008, Jeffrey was 17 and Michael was 22.  Adult daughters Joanne (who turned 24 on April 29, 2008), and Rachel (then 25 years old) were not listed as beneficiaries.

## III. STANDARD

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

- 6 -

Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

"In a contract dispute, a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." John Hancock Mut. Life Ins. Co. v. Amerford Int'l. Corp., 22 F.3d 458, 461 (2d Cir. 1994) (citing Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)). "Contractual language is unambiguous when it has a definite and precise meaning . . . [with] no reasonable basis for a difference of opinion." Id.

### B. Governing Law

The Agreement reached by James and Naomi prior to their divorce states that it "shall be construed and governed in accordance with the laws of the Commonwealth of Virginia." Barbour Aff. Ex. A, 4. Neither party contests this fact, therefore, Virginia law shall govern in the interpretation of the Agreement.

Virginia law is clear as it applies to contract interpretation: "When contract language is plain and unambiguous . . . the intent of the parties [is determined] from the words they actually expressed." White v. Boundary Ass'n, Inc., 624 S.E.2d 5, 8 (Va. 2006). The contract provisions indicate "the unitary expression of the parties' agreement." Id. The courts of Virginia are cautioned against reading language into contracts which will alter the meaning of words within the contract. See Pysell v. Keck, 559 S.E.2d 677, 678 (Va. 2002). Further, a written contract is not labeled ambiguous "'merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement.'" Appalachian Power Co. v. Greater Lynchburg Transit Co., 374 S.E.2d 10, 12 (Va. 1988) (quoting Wilson v. Holyfield, 313 S.E.2d 396, 398 (Va. 1984)). Thus, the plain meaning of

the language used within a contract determines the intent of the parties and guides the interpretation of the agreement. Additionally, when interpreting a contract, adding language to change the meaning is to be avoided.

## III. ANALYSIS

### A. Nesom's Claim to James' Life Insurance Proceeds

Nesom asserts she is entitled to seventy-four percent (74%) of the proceeds from the $610,000 face value of the two LINA policies, with her share of those policies totaling $451,400. Similarly, she states she is entitled to fifty percent (50%) of the NACOLAH policy, which has a face value of $100,000. She does not dispute the remainder of the proceeds was intended for James' sons, Jeffrey and Michael, as the bases for her claims are James' 2008 beneficiary designations, which awarded Nesom, Jeffrey, and Michael specific percentages of his life insurance policies. In regards to the disbursement percentages, the beneficiary forms support Nesom's assertion. Therefore, if the Agreement is not found to invalidate James' decisions, the proceeds will be disbursed in accordance with those beneficiary designations.

The Straney defendants claim Nesom has no right to any of the proceeds because she could not have been named as a beneficiary to the policies. Alternatively, if she could be named as a beneficiary, her proceeds must be used for the benefit of the Straney's children. This argument is based on language used in the Agreement which the Straney defendants interpret as preventing additional beneficiaries and prohibiting the proceeds to be used for the benefit of anyone other than the four Straney children.

The issues here are whether the Agreement effectively prohibited James from adding beneficiaries to his life insurance policies, and, if he could add beneficiaries, whether those added parties would be required to use those proceeds solely for the benefit of the Straney defendants.

Nesom's interpretation of the Agreement unsurprisingly differs significantly from that of the Straney defendants. She argues that the plain and unambiguous meaning of the life insurance clause required James to maintain the insurance policy in place at the time of the Agreement. This section of the insurance clause reads as follows:

> The parties acknowledge that they currently have two $100,000 life insurance policies insuring the life of Husband [James] and Wife [Naomi]. In addition, Husband has certain life insurance through his current employer. Husband agrees to keep in full force and effect all life insurance currently in force. In addition, should Husband obtain new employment and is eligible for life insurance through that employer, Husband agrees to keep said life insurance in full force and effect.

Barbour Ex. A at 12.

There is no ambiguity within this section. James was required to "keep in full force and effect" the two life insurance policies he then had in place. Because the policy through his employer might be terminated if he left for a new job, James agreed to obtain a life insurance policy through his new employer, if he was eligible to do so. Upon such an occurrence, he was again required to keep the policy in full force and effect. There is no question that James did maintain the $100,000 NACOLAH policy in full force, and having changed employers, he also obtained a life policy through the new employer and kept it in full force until his death.

The policies were to be maintained in both full force <u>and</u> <u>effect</u> by James. The desired <u>effect</u> sought becomes apparent in a subsequent section of the insurance clause, which states:

> Both parties agree to designate the children as beneficiaries with the following trustees [names of trustees omitted]. These trustees must act by consensus and can only use the proceeds of these life insurance policies for the benefit of the parties' children. Life insurance coverages in favor of the children as beneficiaries may be ratably reduced by 25% as each child attains the age of 23.

Barbour Aff. Ex. A at 12-13.

Naomi and James' four children were between the ages of five and fourteen when the Agreement was reached, establishing the need for trustees, here the surviving parent and one other individual, to act with one mind and only use the proceeds for the benefit of the children. The Agreement included provisions for James to provide child support for his children, health insurance for them through age 19, and life insurance coverage which may be ratably reduced by 25% as each child turns 23. Thus, the effect sought by James and Naomi in maintaining the policies was to insure their four children through age 23 in the event of the unfortunate death of a parent.

In determining whether additional beneficiaries could be added to the life insurance policies, language within the Agreement provides for the possibility that other parties might become beneficiaries at some point. The Agreement specifically states that "life insurance <u>coverage in favor</u> of the children as beneficiaries" may be reduced in the future. It would have been unnecessary for the drafter to single out the children unless additional

beneficiaries may also be covered by the policy. The parties intended that there may exist at some point other beneficiaries besides the four children.

The Straney defendants argue that because Nesom is not a child of James or Naomi, she cannot be a beneficiary to any of the proceeds. This is a conclusion that, although creative, is not supported by the language of the Agreement. A plain interpretation reveals nothing in the Agreement that places a limit on who may become beneficiary to the policies. The Agreement required James and Naomi to name their four children as beneficiaries; not sole beneficiaries, or exclusive beneficiaries or irrevocable beneficiaries, of their life insurance policies. Neither James nor Naomi were restrained by the Agreement from adding later-born children, a spouse, a parent or a complete stranger as a beneficiary. Although these are issues that perhaps should have been included in the Agreement, Virginia law cautions against a court adding language which alters the meaning of an agreement. See Pysell 559 S.E. 2d at 678. The Agreement does not limit beneficiaries – rather it anticipates their existence.

In the alternative, the Straney defendants claim the Agreement prevents Nesom from using the proceeds of the policies. They infer from the Agreement that because the appointed trustees "can only use the proceeds of these life insurance policies for the benefit of the parties' children," Nesom would be similarly constrained. However, Nesom was not appointed a trustee for minor children; she is a beneficiary of a portion of the proceeds. The Agreement does not limit the manner in which beneficiaries can use their proceeds. Interpreting the Agreement's plain language contextually, James and Naomi's edict to constrain was directed solely towards the trustees. Such an interpretation reflects the

parents' concern over possible misuse by the trustees of the proceeds for the minor children. Nesom will not be so constrained in her use of the life insurance proceeds.

The Straney defendants addition of certain implied restrictions fails to reveal the true meaning of the Agreement, but rather a desired outcome. As part of their Agreement, James and Naomi chose to ensure that if they lost their lives, their young children would be provided for. In doing so, they did not express a desire to prevent other individuals in the future from receiving a benefit under those policies, but rather they anticipated the occurrence. Therefore, the Straney defendants cannot use the divorce Agreement to quash a legitimate claim to proceeds from another party.

### B. Ratable Reduction of Coverage

The Straney defendants construe the Agreement as allowing James the option to reduce the overall life insurance coverage for his children by twenty-five percent each time one of his four children reaches the age of twenty-three. Through this interpretation, the Straney defendants conclude that each of James and Naomi's children must remain as beneficiaries on the parents' life insurance policies until the death of the parents. However, Nesom asserts that the Agreement provided James the opportunity to remove his children from the policy at age twenty-three, if he so desired.

Resolving this issue requires the interpretation of the final sentence of the life insurance section. That sentence reads: "Life insurance coverages in favor of the children as beneficiaries may be ratably reduced by twenty-five percent (25%) as each child attains the age of 23." Again, there is no ambiguity in this sentence. As each of the four children reaches the age of twenty-three, the coverage may be ratably reduced by one-fourth.

The Straney defendants argue the correct meaning of this sentence is that the total amount of coverage for all four children could be reduced by twenty-five percent (25%) each time one child turns twenty-three, thereby reducing the amount of coverage for each child, but keeping each individual covered.  Under that scenario, coverage of the minor children would decline for no other reason than their older sibling celebrating a birthday.  The youngest child could see his benefits wisp away each time his brother or sister blew out their twenty-third candle.  As an example, on a $100,000 policy with only the four children as beneficiaries, the proceeds for the youngest child of $25,000 would decline to $18,750, then $14,063, and $10,547, while the parents would be forced to cover their adult children in an equivalent amount as the minor child.  Those adult children would be covered by their aged parents until James and Naomi lay on their death bed, regardless of the age at which that bell might toll.  This bizarre effect was not the intent of the Agreement.

In the context of the Agreement, the purpose of the life insurance clause was to provide some amount of coverage for James and Naomi's young children in case of their parents' demise.  They selected each other, along with a second party, as trustees to manage the minor children's proceeds.  Earlier sections of the Agreement addressed James' responsibility to provide the children with health insurance coverage through age nineteen and monthly child support payments.  The final sentence of the clause identifies the age of twenty-three as the point at which life insurance coverage would no longer be mandatory.  If either parent chose to eliminate one of the four children from their policy when that child reached twenty-three, they could do so.  The choice of words "ratably reduce by 25%" is an inartful manner of expressing that alternative, but the intent is clear.  The twenty-five percent (25%) reduction represents that child's one-fourth share of the coverage; protection which

would not have to be maintained by the parent once that child attains an age associated with having graduated from college and becoming independent.

Reducing coverage by removing adult children at age twenty-three (23) was an option each parent could make if they so chose. Therefore, James' decision not to include his two adult daughters who had attained the age of 23 as beneficiaries was allowed by the Agreement.

## IV. **CONCLUSION**

The ordinary meaning of the language used within the Agreement is the best determinant of the intent of each clause. Adding language unilaterally after the fact to create a favorable outcome defeats the purpose of the contract. James did not agree to maintain life insurance policies solely for the benefit of his children. Similarly, James did not commit to maintaining life insurance ad infinitum for his adult children, but rather only until they reached age twenty three. Nesom's claim to the proceeds as a beneficiary is proper. The life insurance proceeds will be distributed according to the terms of the beneficiary form in place at the time of James' death.

Accordingly, it is Ordered that:

1. Straney defendant's motion for summary judgment is DENIED;

2. Nesom's cross motion for summary judgment is GRANTED;

3. Proceeds from North American Company for Life and Health Insurance held by the Clerk of the Middle District Court in Florida will be disbursed as follows: Fifty percent (50%) to Jan Nesom, Twenty-five percent (25%) to Michael Straney or his trustee, and Twenty-five percent (25%) to Jeffrey Straney or his trustee; and

      4.  Proceeds from Life Insurance Company of North America held by the Clerk of this Court will be disbursed as follows:  Seventy-four percent (74%) to Jan Nesom, Thirteen percent (13%) to Michael Straney or his trustee, and Thirteen percent (13%) to Jeffrey Straney or his trustee.

      5.  The Clerk of the Court shall retain the funds pending further order of the Court.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  July 30, 2010
       Utica, New York.